## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**
**June 25, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **C.S.-1, H.S., L.S., C.S.-2, and M.S.**

**No. 19-1130** (Hampshire County 19-JA-11, 19-JA-12, 19-JA-13, 19-JA-14, and 19-JA-15)

## MEMORANDUM DECISION

Petitioner Mother B.S., by counsel Lauren M. Wilson, appeals the Circuit Court of Hampshire County's September 11, 2019, order denying her request for an improvement period and terminating her parental rights to L.S., C.S.-2, and M.S., and her custodial and guardianship rights to C.S.-1 and H.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem, Joyce E. Stewart, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in (1) denying her request for an improvement period, (2) terminating her parental rights without imposing a less-restrictive dispositional alternative, and (3) denying her request for post-termination visitation.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2019, the DHHR filed a child abuse and neglect petition against petitioner and the father alleging that they were both incarcerated after a warrant was served on them by a drug task force. The petition alleged that petitioner and the father left the children at home unattended while they traveled several hours to obtain drugs when the warrant was served. The

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because two of the children share the same initials, we will refer to them as C.S.-1 and C.S.-2, respectively, throughout the memorandum decision.

petition further alleged that the children answered the door and one of them provided officers with a key to a safe that contained methamphetamine. Additionally, the DHHR alleged that petitioner was charged with a second offense of truancy due to L.S.'s excessive absences from school. Finally, the petition alleged that the parents had a repeated history of drug use, resulting in educational neglect of the children. Thereafter, petitioner was released from incarceration and waived her preliminary hearing.

The circuit court held an adjudicatory hearing in April of 2019 wherein the court was informed that petitioner and the father were arrested on out-of-state warrants, their bonds were revoked, they remained incarcerated, and they were not transported for the hearing. The circuit court continued the hearing so that they could appear in person. In May of 2019, the circuit court held the continued adjudicatory hearing wherein petitioner and the father stipulated to abusing and neglecting the children. Petitioner and the father moved for post-adjudicatory improvement periods, which the circuit court deferred ruling upon until they could post bond and receive services. The circuit court ordered the DHHR to prepare case plans outlining the services petitioner and the father would be required to participate in as part of any improvement period.

In June of 2019, the circuit court held a hearing to rule on the pending motions for improvement periods. The DHHR informed the court that the parties had agreed upon a case plan at a recent multidisciplinary team meeting. Petitioner attended the meeting, while the father was absent. The DHHR reported that petitioner had enrolled in day report services and had commenced visitation with the children. The DHHR indicated that it believed that the father had been released on bond, but had yet to report for services or supervision. The DHHR recommended that the case plan be approved later so that petitioner and the father could begin their improvement periods at the same time. Under questioning from the court, petitioner stated that she thought the father was still incarcerated. However, the DHHR checked the online inmate directory which indicated that the father had been released on bond. The circuit court then confirmed with jail administrators that the father had been released on June 1, 2019, nine days before the hearing. The circuit court then scheduled a later hearing for the father to appear.

The circuit court held another hearing in June of 2019 wherein the parties appeared in order to approve the case plan. However, petitioner's bond was revoked after she tested positive for controlled substances. In response, the DHHR no longer supported granting petitioner an improvement period. Petitioner contended that lab results of the initial test returned as negative for all controlled substances and that a motion to release her on bond was filed prior to the court hearing. Petitioner then moved for her potential improvement period to be severed from the father's potential improvement period. The circuit court ordered that should petitioner's bond be reinstated, she could resume supervised visitation with the children. It then scheduled a dispositional hearing.

In August of 2019, the circuit court held a final dispositional hearing where it considered petitioner's motion for an improvement period while the DHHR moved for termination of her parental rights. During the hearing, petitioner testified that she would comply with the terms and conditions of an improvement period. However, petitioner admitted that she was an addict and had a drug problem for the last ten years. Additionally, petitioner admitted that she lied in June of 2019 when she told the circuit court that the father was still incarcerated when, in fact, she knew he was

2

out and failed to appear for a court hearing. Next, a DHHR caseworker testified that, at the time of the hearing, petitioner was incarcerated and had been unable to participate in services because she had been incarcerated for a majority of the proceedings. The caseworker also testified that the children in the case needed permanency and that petitioner's lack of participation and involvement in the case prevented this closure. Finally, child H.S., who was fifteen years old, testified that he did not want petitioner's parental rights terminated as to him and that his older brother, C.S.-1, informed him that he did not wish petitioner's parental rights terminated as to him either. As a result of the testimony and evidence presented, the circuit court denied petitioner's motion for an improvement period. The circuit court considered petitioner's "incarceration for a majority of this case," lack of participation in services, lack of candor with the court, and continued substance abuse. Ultimately, the circuit court concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that it was in the best interest of the children to terminate petitioner's parental rights to L.S., C.S.-2, and M.S. and her custodial and guardianship rights to C.S.-1 and H.S. The court's September 11, 2019, dispositional order reflected this termination.[2] It is from this dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner alleges that the circuit court erred in denying her motion for a post-dispositional improvement period because she acknowledged her substance abuse problem and "took steps to remedy the problem," including acceptance into a long-term inpatient treatment program. Petitioner also argues that while her incarceration "did not help," she was released only a few weeks after the dispositional hearing and has done well since her release. In light of this, she argues that the circuit court should have granted her a post-dispositional improvement period. We disagree.

---

[2]The father's parental rights to L.S., C.S.-2, and M.S. and custodial and guardianship rights to C.S.-1 and H.S. were also terminated. The permanency plan for L.S., C.S.-2, and M.S. is adoption in the same foster home. The permanency plan for H.S. is guardianship with a foster family. Finally, C.S.-1 has reached the age of majority.

Notably, petitioner does not dispute that she was incarcerated for a majority of the proceedings and, as a result, largely failed to participate in services throughout the case. Indeed, petitioner readily acknowledges that incarceration "did not help the . . . case go well for her." Instead, petitioner argues that "she acknowledged the problem" and indicated her intention to fully participate in the improvement period. While it may be true that petitioner has previously acknowledged struggling with substance abuse, she has at other times flatly denied or minimized such abuse, at one point indicating that she did not think her substance abuse was impacting her parenting because she did not use drugs in front of the children. Despite this evidence, petitioner asserts that she was wrongly denied an improvement period.

West Virginia Code § 49-4-610(3)(B) provides that the circuit court may grant a parent a post-dispositional improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the miscreant parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). However, the circuit court has discretion to deny an improvement period when no improvement is likely. *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002).

Petitioner disputes the circuit court's finding that she was unlikely to fully participate in an improvement period because she argues that she "has done well since her release," including obtaining sobriety, performing community service, and seeking substance abuse treatment. These unsupported assertions entitle petitioner to no relief, however, because such conduct, if it has in fact occurred, took place well after the dispositional hearing and, therefore, could not have been considered. Based on the evidence presented below, the circuit court found that petitioner was unlikely to fully participate in an improvement period, in large part, because she was incarcerated for a majority of the proceedings and did not participate in services during the case. The circuit court also found that petitioner was facing a risk of further incarceration due to her pending charges and continued substance abuse. In fact, at the time of the dispositional hearing, petitioner was serving a period of incarceration due to a revoked bond. While petitioner argues that she was on the cusp of release and would have been able to start an improvement period within weeks of the dispositional hearing, this was entirely speculative in nature. Additionally, the circuit court found that petitioner had "blatantly misrepresented herself to the [c]ourt" in an effort to protect the father by lying about his whereabouts and release from incarceration. While petitioner contends that nothing precluded the circuit court from granting her an improvement period in this case, there is no evidence she would comply with an improvement period. Accordingly, we find no error in the circuit court's denial of her motion.

Next, petitioner alleges that the circuit court should have imposed a less-restrictive dispositional alternative pursuant to West Virginia Code § 49-4-604(b)(5) (2019).[3] However, the evidence introduced during the proceedings below supports the circuit court's termination of

---

[3]Although the Legislature amended West Virginia Code § 49-4-604 effective June 5, 2020, including renumbering the provisions, the amendments do not impact this case.

petitioner's parental rights as to L.S., C.S.-2, and M.S.[4] West Virginia Code § 49-4-604(b)(6) (2019) permits a circuit court to terminate parental rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the children. With these parameters in mind, it is clear that the record supports the circuit court's finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect, given her untreated substance abuse issues and lack of candor with the circuit court. Indeed, West Virginia Code § 49-4-604(c)(1) (2019) provides that a situation in which there is no reasonable likelihood the conditions of abuse and neglect cannot be substantially corrected includes when

> [t]he abusing parent . . . [has] habitually abused or [is] addicted to alcohol, controlled substances or drugs, to the extent that proper parenting skills have been seriously impaired and the person . . . [has] not responded to or followed through the recommended and appropriate treatment which could have improved the capacity for adequate parental functioning[.]

While it is true that petitioner may be able to undergo some treatment in the future for her substance abuse, such possible improvement was based on pure speculation. Indeed, petitioner denied a substance abuse problem on several occasions. Further, petitioner often failed to avail herself of the DHHR's services, even at times when she was not incarcerated. The record shows that the children would have been at risk if returned to petitioner's care, given her untreated substance abuse issues. As such, it is clear that their welfare required termination of petitioner's parental rights.

While petitioner also takes issue with the timeframe from adjudication to termination, arguing that she should have been given additional time and an opportunity to demonstrate that she could correct the conditions of abuse and neglect, we have previously held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4, in part (citation omitted). Further, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604 (2019)] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c) (2019)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, we find no error in the termination of petitioner's parental, custodial, and guardianship rights.

---

[4]As previously noted, petitioner's rights were not terminated as to the two older children, C.S.-1 and H.S., as based on their wishes.

Finally, petitioner argues that the circuit court erred in denying her motion for post-termination visitation because the circuit court order provided that if she remediated the conditions of abuse and neglect and demonstrated sobriety, the court would consider a motion for visitation. Further, petitioner argues that she filed a motion for post-termination visitation after experiencing "a complete turnaround." Petitioner contends that she was doing everything she needed to have visitation restored, including residing at a recovery home, attending substance abuse and anger management classes, and passing all of her drug screens. We find petitioner's arguments unavailing.

In regard to post-termination visitation, we have previously held that

> "[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002). Here, the circuit court found that while petitioner was making progress to remediate the conditions of abuse and neglect, it was not in the best interests of the children to grant visitation at the time. The DHHR and guardian argued that contact with the youngest children, C.S.-2 and M.S., would be disruptive and interfere with their ability to continue bonding with their foster parents. Further, the circuit court found that petitioner's substance abuse treatment program was a twelve to eighteen-month program and that upon completion, she "may put herself in a position later for the relief requested." Accordingly, we find no error in the circuit court's denial of petitioner's motion for post-termination visitation with the children.

Lastly, because permanent placement for the children has not yet been achieved, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for children within twelve months of the date of the disposition order. As this Court has stated,

6

[t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

[i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(b)(6) (2019)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 11, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: June 25, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison